193 N.J. Super. 637 (1984)
475 A.2d 644
RONALD BOOTH, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF WINSLOW, A MUNICIPAL CORPORATION, GARY F. STOWELL, SR., CHIEF OF POLICE, TOWNSHIP OF WINSLOW, DOMINIC MAIESE, MAYOR AND PUBLIC DIRECTOR, TOWNSHIP OF WINSLOW, DEFENDANTS-RESPONDENTS, AND STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1984.
Decided March 15, 1984.
*638 Before Judges BOTTER, PRESSLER and O'BRIEN.
Thomas F. McGuire argued the cause for appellant.
Benjamin Goldstein argued the cause for defendants-respondents Township of Winslow, et al. (Maressa, Goldstein, Birsner & Patterson, attorneys).
Mark J. Fleming, Deputy Attorney General, argued the cause for respondent State of New Jersey (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
Michael A. Pane argued the cause for amicus curiae New Jersey Institute of Municipal Attorneys (William J. Caldwell, on the letter brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
*639 This is an appeal from a summary judgment entered by the Law Division declaring N.J.S.A. 40A:14-122.1 unconstitutional. That statute prohibits a municipality from requiring police officers to reside within the municipality as a condition of employment. We reverse.
Plaintiff Ronald Booth was first employed as a police officer by defendant Township of Winslow in 1975. He did not then reside in the Township and has never since resided there except for a six-month period in 1979. In 1977 the Township adopted an ordinance requiring all municipal employees to reside in the municipality, affording those who did not a two-year period in which to become bona fide residents.
Plaintiff's employment was terminated by the Township in 1980 because of his non-compliance with the residency ordinance. Plaintiff, contending that the municipal residency requirement violated the preemptive provisions of N.J.S.A. 40A:14-122.1, brought this action seeking reinstatement and back pay. The Township asserted that the statute was unconstitutional on equal protection grounds because it was based on an irrational classification. It therefore contended that its ordinance was valid and enforceable, and it sought summary judgment so declaring.
Before dealing with the constitutional issue, we note that plaintiff has raised a threshold issue respecting the Township's standing to challenge the constitutionality of N.J.S.A. 40A:14-122.1. We agree that ordinarily a municipality, as a creature of the state, itself "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." Williams v. Mayor, 289 U.S. 36, 40, 53 S.Ct. 431, 77 L.Ed. 1015 (1933). And see Jersey City Redevelopment Agency v. Kugler, 111 N.J. Super. 50, 55 (App.Div. 1970), aff'd 58 N.J. 374, 377 (1971); Borough of Glassboro v. Byrne, 141 N.J. Super. 19, 23 (App.Div. 1976), certif. den. 71 N.J. 518 (1976). The Township, however, urges, and the trial judge agreed, that *640 standing should be accorded here because the Township is not seeking to protect its own constitutional rights but rather those of its other employees. It also argues that while it may not have standing to initiate a constitutional attack, it may do so defensively. We are satisfied that the standing question is at least debatable, and, as we concluded in Jersey City Redevelopment Agency v. Kugler, supra, "rather than debate the question * * * we deem it preferable in the public interest to settle the constitutional questions presented on their merits."
Having considered the legislative history of N.J.S.A. 40A:14-122.1 as well as subsequent legislative enactments addressing the question of municipal residency, we are satisfied that the challenged statute constitutes a valid exercise of legislative power.
N.J.S.A. 40A:14-122.1, enacted in 1972, provides that
No municipality shall pass any ordinance, resolution, rule, regulation, order or directive, making residency therein a condition of employment for the purpose of original appointment, continued employment, promotion, or for any other purpose for any member of a police department and force and any such ordinance, resolution, rule, regulation, order or directive in existence on the effective date of this act or passed hereafter shall be void and have no force or effect.
N.J.S.A. 40A:14-9.1, simultaneously adopted, similarly provides in respect of fire fighters. The 1972 statute constituted a significant reversal of long-standing legislative policy requiring police officers to reside in the municipality which employed them as a condition both of initial appointment and continued service. See N.J.S.A. 40:47-3 and 5, repealed in 1971 by N.J.S.A. 40A:14-176 and readopted, respectively, as N.J.S.A. 40A:14-122 and 128. And see, generally, Kennedy v. City of Newark, 29 N.J. 178 (1959); Mercadante v. The City of Paterson, 111 N.J. Super. 35 (Ch.Div. 1970), aff'd o.b. 58 N.J. 112 (1971). Krzewinski v. Kugler, 338 F. Supp. 492 (D.N.J. 1972). Cf. Abrahams v. Civ. Serv. Comm., 65 N.J. 61 (1974). The Legislature explained this reversal of policy in the Statement of the Senate Judiciary Committee which accompanied the proposed legislation. That statement referred to the difficulty many municipalities were facing in recruiting police and fire *641 fighters because of the existing residency requirement and expressed the desirability of having a uniform solution to this problem on a state-wide basis. The 1972 legislation, while eliminating the residency requirement, did, however, create a preference for a resident seeking either appointment or promotion who achieved the same score as a non-resident on a civil service or merit examination. See N.J.S.A. 40A:14-122.3 (repealed) and 122.4.
The virtual abandonment of residency requirements effected by N.J.S.A. 40A:14-122.1 was apparently perceived by some municipalities as counterproductive to the public interest in securing a responsive local police force. Accordingly, in 1976 the Legislature adopted N.J.S.A. 40A:14-123.1a, which authorized municipalities to establish preference classes for initial appointment to the police force and permitted them to exhaust the class of local residents before appointing non-residents. In Re Leary, 91 N.J. 151, 155 (1982), stated the purpose of the 1976 statute as follows:
Evidently regarding the limited preference for appointment of residents afforded by the 1972 act as inadequately accommodating the legitimate concerns of the appointing municipality, the Legislature substantially expanded the scope of that preference by its 1976 adoption of N.J.S.A. 40A:14-123.1a, the statute here in controversy. The general plan of the statute is to eliminate any promotional preference based on residency but to permit municipalities to classify applicants' initial appointment to police officer positions into four preference classes and to make its appointments from among the eligible candidates of each higher preference class before having to consider the eligible candidates within the next lower preference class. The classes, in order of preference, are municipal residents, other residents of the county, other residents of the State, and all others.
And see the Statement accompanying the 1976 statute, which made clear that its intention was to permit a more substantial preference for local residents on initial appointments. See Gallagher v. Irvington, 190 N.J. Super. 394, 399 (App.Div. 1983). As in the case of the 1972 legislation, the 1976 legislation applied to fire fighters as well as to police officers. See N.J.S.A. 40A:14-10.1a.
The final piece of relevant legislation is N.J.S.A. 40A:9-1.3, adopted in 1978, which accorded municipalities the authority to *642 require all their officers and employees to be bona fide residents therein "unless otherwise provided by law." It is clear, therefore, that if the present legislative scheme respecting police officers as set forth in N.J.S.A. 40A:14-122.1 and 123.1a is constitutionally valid, those municipal employees are not included within the ambit of the general provision of N.J.S.A. 40A:9-1.3.
As a fundamental principle of constitutional law, the present legislative scheme must be sustained if the classification on which the disparate treatment is based is rationally related to a legitimate governmental objective. See Abrahams v. Civ. Serv. Comm., supra, 65 N.J. at 71. We are satisfied, contrary to the conclusion of the trial court, that the classification attacked here meets the rational-relation standard.[1]
To begin with, we are of the view that the trial judge failed to appreciate the importance of N.J.S.A. 40A:14-123.1a, although it constitutes an integral and significant component of the overall police residency scheme. The import of that statute is to minimize the degree of disparity in the treatment of the distinct classes of municipal employees by permitting municipalities to give preferential treatment to qualified residents in making appointments to their police and firefighting departments. To that extent, the overall legislative plan permits municipalities to achieve the benefits of a residential connection between police officers and the municipalities they serve without precluding recruitment of officers from a larger pool.
More significant, however, is the presumptive rationality of a class of municipal employees consisting only of police officers and fire fighters. See Trainor v. City of Newark, 145 N.J. Super. 466, 474 (App.Div. 1976). In dealing with that class, the *643 Legislature has recognized that the ultimate goal of affording the public the benefit of the best possible municipal police and fire-fighting forces is affected by conflicting considerations. Thus the municipal ability to recruit the best available applicants may be severely constrained by a residency requirement, and obtaining the benefits of local residency may well result in a compromise in the quality of appointments resulting from a constricted recruitment pool. These are difficult conflicts to resolve. The Legislature has opted to resolve them by a uniform scheme, applicable on a state-wide basis, which permits municipalities to require residency as a condition of appointment so long as qualified resident-applicants are available but not as a condition of continued service or promotion. It is not for us to question the wisdom of that scheme or to evaluate it against other alternatives. Our sole task is to determine whether it constitutes a rational response, based on a rational classification, to a governmental problem. We are persuaded that it patently meets this test.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] We note the applicability of the traditional equal protection test rather than the "compelling state interest" test since the classification here is not "suspect" in the constitutional sense and since no fundamental rights are abridged by the challenged legislation.