CONLEY, J.T.C.
This case presents a narrow question regarding the calculation of rollback tax assessments under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq. According to the act, when property receiving the benefit of a reduced assess *243 ment as farmland is applied to a use other than agricultural or horticultural, it is subject to additional taxes, referred to as rollback taxes, for the year of the change in use and for either of the immediately preceding two years for which it was assessed as farmland. N.J.S.A. 54:4-23.8. The question in this case is whether rollback tax assessments should be established at 100% of the fair market value of the property or at the common level of assessment in the taxing district for the relevant years. This issue was raised but not decided in Plushanski v. Union Tp., 176 N.J.Super. 626, 634-635, 1 N.J.Tax 520, 528-529, 424 A.2d 473 (Tax Ct.1980). In my opinion rollback tax assessments must be within the “common level range” of assessments as defined by the Legislature in N.J.S.A. 54:1-35a et seq. (L.1973, c. 123). But cf., e.g., Sunshine Biscuits Inc. v. Sayreville, 4 N.J.Tax 486, 508 (Tax Ct.1982) (in which the court held that a common level of assessment could be established by application of a methodology other than that of chapter 123 in the year of a district-wide reassessment).
Plaintiff’s property was assessed as unimproved farmland pursuant to the Farmland Assessment Act for 1979, 1980 and 1981. The assessments were $33,900 for 1979 and 1980, and $33,400 for 1981. In 1981 final site plan approval was obtained for non-farm development of the property. The tract was conveyed that year to a new owner for $784,342. At the initiative of defendant’s tax assessor, the Somerset County Board of Taxation entered a rollback tax judgment with respect to the property for 1979, 1980 and 1981. The judgment was based on the difference between the farmland assessments mentioned above and the “regular assessment” of $784,300 for each of the three years. The assessor obviously established the regular assessment of the property at 100% of the 1981 sale price.
Plaintiff in the present action challenges the amounts of the rollback tax assessments and has moved for partial summary judgment as to the proper calculation of such assessments. At the request of the court, the Attorney General has participated *244 in the proceeding to submit his view of the legislative history and purpose of the rollback tax provision.
The dispute in this case arises from differing constructions by the parties of certain language in N.J.S.A. 54:4-23.8, the rollback tax section of the Farmland Assessment Act. The language at issue is as follows:
In determining the amounts of the rollback taxes chargeable on land which has undergone a change in use, the assessor shall for each of the rollback tax years involved, ascertain:
(a) The full and fair value of such land under the valuation standard applicable to other land in the taxing district;
(b) The amount of the land assessment for the particular tax year by multiplying such full and fair value by the county percentage level, as determined by the county board of taxation in accordance with section 3 of P.L.1960, chapter 51 (C. 54:4-2.27).... [N.J.S.A. 54:4-23.8]
Plaintiff contends that subsection (a) requires the assessor to determine not only the market value of the property but also the discrimination ratio generally applicable in the taxing district. The Attorney General construes subsection (a) as does plaintiff, to require a determination of both valuation and discrimination in the establishment of a rollback tax assessment. For a discussion of the discrimination issue in tax assessment litigation, see Weyerhaeuser Co. v. Closter Bor., 190 N.J.Super. 528, 464 A.2d 1156 (App.Div.1983). Defendant contends that subsection (a) requires a determination only as to true value, not discrimination. All parties agree that subsection (b) does not effectuate discrimination relief because the county percentage level for Somerset County for 1979, 1980 and 1981 was 100%.
Defendant concedes that its interpretation of subsection (a) would result in a higher rollback tax assessment on the subject property than the regular assessment would have been had the property not benefited from farmland assessment in 1979, 1980 .and 1981. This is because all “regular assessments” in the township were or should have been within the common level range of assessments promulgated by the Director of the Division of Taxation pursuant to L.1973, c. 123 for Bernards Township. The common level ranges for those years were 47% to *245 65%, 48% to 66% and 39% to 53% of market value, respectively. Assessments within these ranges were deemed to have been made “according to the same standard of value” as required by the tax clause of the State Constitution, N.J. Const. (1947), Art. VIII, § I, par. 1(a). See Weyerhaeuser Co. v. Closter Bor., supra. Defendant argues, however, that the uniformity provision of the constitution does not apply to rollback taxes. Defendant characterizes rollback taxes as a penalty imposed on a taxpayer who has received the benefit of farmland assessment and who then applies his property to a use other than agricultural or horticultural. Defendant’s premise is that the penalty of such “additional taxes” can be distinguished from a regular tax assessment.
In the present context defendant makes a distinction without a difference. The constitutional amendment to permit farmland assessment was recommended by a special citizen’s committee appointed by Governor Richard J. Hughes to study the property tax burden on farmland. In its report, the committee made a specific recommendation with respect to a rollback tax provision. It characterized rollback taxes as “a tax deferral or recapture feature.... ” Jackson Tp. v. Paolin, 181 N.J.Super. 293, 304, 3 N.J.Tax 39, 50, 437 A.2d 344 (Tax Ct.1981). Thus, even if a rollback tax could fairly be characterized as a penalty, the amount of the penalty is limited to the amount of property tax the taxing district would have received if the property had not been assessed as qualified farmland for the relevant years. It follows that rollback tax assessments must comply with the tax clause of the State Constitution.
The position advocated by plaintiff and the Attorney General is correct and I so hold. If equality of assessments were not reflected in rollback tax assessments they would not be made “according to the same standard of value” as all other assessments in the taxing district. This result would be violative of the tax clause of the State Constitution. N.J. Const. (1947), Art. VIII, § I, par. 1(a). A court must construe a statute to avoid constitutional defects if the statute is “reasonably *246 susceptible” of such construction. N.J. Bd. of Higher Ed. v. Shelton College, 90 N.J. 470, 478, 448 A.2d 988 (1982). In the present situation subsection (a) of N.J.S.A. 54:4-23.8 is reasonably susceptible of a construction which encompasses discrimination relief. In fact, the discrimination issue would seem to be inseparable from the issue of valuation. Weyerhaeuser Co. v. Closter Bor., supra.
Plaintiff’s motion for partial summary judgment is therefore granted. However, the fair market value of the subject property has not yet been addressed. Cf. Schere v. Freehold Tp., 150 N.J.Super. 404, 375 A.2d 1218 (App.Div.1977). The matter will be listed for trial on that issue.