**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2954-23

MARC CELLER,

    Plaintiff-Appellant,

v.

1017 PARK AVENUE, LLC,
ESTATE OF VINCENZA
PETRUZZELLA,
GAETANO PETRUZZELLA,
VITO PETRUZZELLA, and
LAZZARO PETRUZZELLA,

    Defendants-Respondents.

_____

Argued November 5, 2025 – Decided March 2, 2026

Before Judges Gooden Brown and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4735-19.

John V. Salierno argued the cause for appellant (Law Offices of Peter W. Till, attorneys; John V. Salierno, on the brief).

Alberico De Pierro argued the cause for respondents (De Pierro Radding, LLC, attorneys; Alberico De Pierro, on the brief).

PER CURIAM

Plaintiff, Marc Celler, appeals a series of Law Division orders denying two motions for summary judgment, two motions for reconsideration, and entering a no cause verdict after a bench trial on all plaintiff's claims against defendants, 1017 Park Avenue, LLC, Estate of Vincenza Petruzzella, Gaetano Petruzzella, Vito Petruzzella, and Lazzaro Petruzzella.[1] Plaintiff sought $7,526 in rent refunds from defendants, as well as treble damages, alleging breach of contract and violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 (CFA). Plaintiff alleged defendants[2] overcharged him for monthly rent from 2015 to 2020 in violation of Hoboken's rent-control ordinance, Hoboken, N.J., Code § 155-4 (the ordinance) that limits the amount of rent landlords may collect

---

[1] Three separate judges entered the various orders, with the first denying summary judgment and reconsideration, the second denying plaintiff's subsequent motions for summary judgment and reconsideration, and the third presiding over the trial and entering the no cause.

[2] We reference defendants collectively as they appear jointly on appeal and advance a uniform response, and because the claims plaintiff raises render immaterial which defendants performed each discrete action.

A-2954-23

from tenants living in certain rent-controlled apartments throughout the city, including plaintiff's.

Although we affirm the orders denying summary judgment and reconsideration, we vacate the entry of no cause and remand for a new trial in accordance with this decision.

I.

Plaintiff leased defendants' rent-controlled apartment from 2015 to 2020. On December 8, 2019, plaintiff filed a complaint alleging defendants violated the CFA, N.J.S.A. 56:8-2, by "charging," "collecting," and "demanding" increases in the rents from plaintiff in excess of the amount permitted by the City."

Defendants filed a counterclaim asserting "plaintiff failed to pay the correct legal rent owed from the apartment he rented." Defendants' counterclaim was based on a tax surcharge of $392 per month the City of Hoboken, New Jersey Rent Leveling and Stabilization Board (Board) granted to landlords who own rent-controlled apartments, which defendants transferred to plaintiff for the period of May 2019 to May 2020.

A-2954-23

A. First Motions for Summary Judgment and Reconsideration

At the close of discovery, plaintiff moved for summary judgment, arguing defendants' violation of the ordinance constituted "unlawful" conduct under the CFA that caused an "ascertainable loss" to plaintiff for which he is entitled to a rent refund. Defendants cross-moved for summary judgment, arguing that the ordinance's two-year statute of limitations barred plaintiff's claim, defendants are not "sellers" under the CFA, and defendants are entitled to unpaid rent based on the tax surcharge increase imposed by the Board.[3] Plaintiff contended that the two-year statute of limitations relied on by defendants was invalidated by our decision in Knight v. City of Hoboken Rent Leveling & Stabilization Board, 332 N.J. Super. 547 (App. Div. 2000) (determining the Board acted beyond its authority and in contravention of a separate enabling ordinance by imposing a two-year limitation on a tenant's right to receive a refund on rent overcharges), and alternatively claimed defendants improperly increased his rent because he was not served with proper notice.

The rent leveling provision of the ordinance provides, in part:

> All rents for rental of housing space and services in dwellings to which this act is applicable are hereby

---

[3] Plaintiff provides no transcripts of any of the motion arguments; thus, we derive our understanding of the parties' arguments before the respective motion judges from the corresponding orders and written decisions.

controlled at the base rent level received by the landlord as of October 1, 1985, and no rental increases shall be hereinafter demanded, paid or accepted, except as provided in this chapter. Any rent increases imposed after October 1, 1985, to the extent that such increases are in excess of the rent increases allowed under this ordinance, are hereby declared to be null and void, and subject to the limitations and repose period set forth herein, such excess rents shall be refunded or credited to the tenant by the landlord forthwith. . . . Any landlord seeking an increase shall notify the tenant, in writing, at least [thirty] days prior to the effective date of the increase and explain, in detail, the reason for the increase.

[Hoboken, N.J., Code § 155-4.]

The ordinance imposes a "[t]wo-year statute of limitations" on refund requests:

A refund and/or credit of excess rents shall be barred if the tenant's request for a legal rent calculation is not made within two years from service of the disclosure statement upon the tenant. The statute of limitations commences only upon proper service of the disclosure statement in compliance with § 155-4. Nothing in this provision shall bar a tenant from requesting a legal rent calculation, nor prohibit the Rent Regulation Officer or Board from rendering a determination as to whether the rent of the dwelling is in excess of those permitted under this chapter.

[Hoboken, N.J., Code § 155-4(b).]

The ordinance also contains a "[t]wo-year period of repose," which directs:

> In no instance shall a tenant be allowed to collect rental overcharges for a period in excess of two years as determined by the Rent Leveling Officer or the Board. Nothing in this provision shall bar a tenant from requesting a legal rent calculation, nor prohibit the Rent Regulation Officer or Board from rendering a determination as to whether the rent of the dwelling is in excess of those permitted under this chapter.
>
> [Hoboken, N.J., Code § 155-4(c).]

By order and written decision, the first motion judge denied both plaintiff's and defendants' motions for summary judgment. The judge found certain undisputed facts as follows. "Plaintiff leased the Hoboken apartment in July 2015 from owner and landlord, Vincenza Petruzzella." "The lease agreement between plaintiff and Ms. Petruzzella provided for a one-year term at $2,150 per month." "Ms. Petruzzella thereafter died, and Vito Petruzzella, her son, signed a lease agreement with plaintiff for $2,200 per month" and "on October 31, 2018, title of the property was transferred by Vito to 1017 Park Avenue, LLC."[4] "Plaintiff's rent payments were $2,150 from August 2015 through December 2017; $2,200 from January 2018 through January 2019; and $2,244 from February 2019 to January 2020."

---

[4] The court noted "Vito, along with Gaetano Petruzzella and Lazzaro Petruzzella, are the sole members of the LLC."

The judge found, in April and December 2019, the Board sent a letter to defendants that included calculations of the legal base rent for plaintiff's apartment as follows: "$1,1991 effective August 1, 2015;[5] $2,009 effective August 1, 2016; $2,045 effective August 1, 2017; $2,090 effective August 1, 2018; and $2,122 effective August 1, 2019."

The motion judge further stated, "On May 7, 2019, the [Board] granted a tax surcharge of $329 per unit per month." The judge also found "on October 1, 2019, a notice was sent to plaintiff advising of an increase in rent." According to the motion judge, "Plaintiff was required to respond. Plaintiff did not respond [and] a notice to quit was served upon plaintiff on November 26, 2019."[6]

The motion judge identified the elements of a CFA claim[7] and found the CFA applied and defendants were "sellers" under the CFA. The judge found

[5] We presume the total of "$1,1991" reflected in the written opinion is a typographical error because the correct amount of rent charged for this period is $1,991.

[6] The November 26 letter defendants sent to plaintiff contained a heading stating, "NOTICE TO CEASE," and explained that plaintiff was "in breach of the lease covenants because [he] did not notify [defendants] within [fifteen] days after [he] received the renewal notice. This is cause for termination of your tenancy."

[7] "The CFA requires a plaintiff to prove three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship

A-2954-23

"no factual dispute" that "plaintiff paid rent in excess of the Rent Leveling Board's maximum allowable rent."

The court specifically addressed and rejected plaintiff's argument contending a panel of this court invalidated the ordinance's two-year statute of limitations in Knight. The judge found our decision in Knight inapplicable as it dealt with "a different issue of administrative law" and the Board there acted "where authority was not codified," noting that the ordinance was "amended in 2011 to be consistent with the holding in Knight."

The judge rejected what it characterized as plaintiff's argument defendants did not increase his rent lawfully pursuant to a tax surcharge because defendants failed to serve plaintiff with a notice to quit. The court stated, "Defendant[s] provide[d] a notice to quit dated November 26, 2019."[8]

---

between the unlawful conduct and the ascertainable loss.'" D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).

[8] The judge reasoned:

> absent a notice to quit or subsequent agreement between the parties, any attempt to increase rent is ineffective, and the tenancy continues at the old term. Skyline Gardens Inc. v. McGarry, 22 N.J. Super. 193, 196 (App. Div. 1952). Plaintiff claims that no Notice to Quit was served upon him, and therefore defendants

Thus, the judge concluded the ordinance's two-year limitation applied, but denied both parties' motions for summary judgment finding "a genuine issue of material fact as to whether defendant[s are] entitled to rent based upon the tax surcharge." The court explained, "The surcharge was granted to defendant[s] on May 7, 2019, and there is a question as to whether plaintiff was required to pay the surcharge in light of the notices sent to plaintiff."

Plaintiff subsequently moved for reconsideration, which the court denied, finding "no basis to reconsider."

---

fail to establish that plaintiff's rent was ever increased subsequent to the Board's approval of the tax surcharge.

However, in reply, Defendant provides a notice to quit dated November 26, 2019. The notice . . . indicates that on or about October 1, 2019 a notice was sent to plaintiff advising plaintiff of an increase in rent. The notice references the lease agreement between the parties which states under line 27 that plaintiff was required to respond to the letter increasing rent within 15 days. The lease further states that failure to respond would indicate rejection. However, the notice to quit indicates that on November 6, 2019 plaintiff informed defendant that he would remain in the unit.

A-2954-23

B.    Plaintiff's Second Motions for Summary Judgment and Reconsideration

Months later, plaintiff again moved for summary judgment, arguing in relevant part "defendants' alleged violation of the rent control ordinance is unlawful conduct under the CFA that caused him an ascertainable loss . . . ."[9] Defendants opposed plaintiff's motion on the grounds that plaintiff failed to show he sustained an ascertainable loss under the CFA.

Pertinent to this appeal, the second motion judge enumerated her findings of undisputed fact, mirroring the lease history and rental amounts found by the first motion judge. The second motion judge also found: in April 2019, the Board "calculated the legal base rent for the apartment at $2,090, effective August 2018, $2,045 effective August 1, 2017, $2,009, effective August 1, 2016, and $1,991 effective August 1, 2015"; "in October 2019, [the LLC] again attempted to increase the rent"; two months later the Board again calculated the legal base rent for the apartment, listing the same rents for the identical time periods as it did in the April 2019 calculation, with the exception of the legal base rent effective August, 2019, which was $2,122; and plaintiff paid rent in the monthly amount of "$2,150 from August 2015, through December 2017;

_____

[9] Defendants did not again cross-move for summary judgment.

10                                                    A-2954-23

$2,200 from January 2018, through January 2019; and $2,244 from February 2019, through January 20[20]."

The judge then determined plaintiff paid a total of "$7,526 above the legal rent." However, in addressing whether plaintiff suffered an ascertainable loss under the CFA, the judge highlighted the ordinance "limits a tenant's recovery to two years of overpaid rent." Addressing, and like the first motion court rejecting, plaintiff's identical Knight argument, the judge stated she found "no basis to invalidate the application of the two-year limitation in this matter."

The judge found, in light of "the two-year statute of limitations under [the] Hoboken ordinance, . . . [plaintiff] ha[d] not suffered an ascertainable loss under the CFA." The judge, however, also recognized "[t]he City granted [defendants] a tax surcharge totaling $329 for twelve months, which was legally permitted to be transferred to plaintiff." Thus, the judge calculated the offset and concluded, "the two-year limitation period coupled with the $329 legally permissible surcharge evidences that in actuality [plaintiff] is indebted to [defendants] for the sum of $702," and therefore, "[plaintiff] has failed to show that he suffered an ascertainable loss under the CFA." The judge accordingly denied summary judgment in plaintiff's favor.

A-2954-23

Plaintiff moved for reconsideration. The same judge denied the motion but "agree[d] with plaintiff's contention that [defendants] failed to serve a notice to quit on . . . plaintiff in order to effectuate the rent increase permitted by the City for the time period before October 1, 2019." The judge noted, however, "the notice to quit indicate[d] that on November 6, 2019 plaintiff informed defendant[s] that he would remain in the unit. Plaintiff then renewed the lease, which stated the increased rent based on the October 1, 2019 letter, effective January 31, 2020."

The judge noted "[the first summary judgment motion judge's] opinion also found [the] ordinance limits a tenant's recovery to two years of overpaid rent." Accordingly, the court found "any recovery sought by . . . plaintiff is time-barred before January 2018 as . . . plaintiff filed his complaint on December 8, 2019," and "all claims of alleged overpayments of rent are then time-barred for the periods of May 2017 until December 2017 based on the December 8, 2019 filing date of the complaint." The court also denied "recovery after October 1, 2019 as [defendant] properly served a notice of the rent increase on . . . plaintiff."

A-2954-23

The judge then calculated plaintiff's rent overpayments, concluding "plaintiff overpaid $3,401 from the period of January 2018 to July 2019."[10] However, the judge then subtracted $3,948—the amount owed on defendant's counterclaim—finding plaintiff owed defendants $547. Accordingly, the court denied reconsideration of the second summary judgment determination again finding plaintiff "did not suffer an ascertainable loss under the CFA."

C. The Trial

A bench trial followed before a third judge on October 2, 2023 during which no testimony or evidence was presented. Instead, the hearing commenced with plaintiff's counsel representing the parties "stipulate[d] to the facts that . . . [the second motion court] found as fact in plaintiff's motion for summary judgment."

To that proposal the trial court questioned "as a result of stipulating to those facts, . . . where does that lead us to?" Plaintiff's counsel responded, "plaintiff is asking for the court to find the base amount of damages in an amount

---

[10] We note our inability to replicate the court's calculation using the rent payments for January 2018 to July 2019. However, even if the court were to calculate the amount of overpayment from January 2018 to July 2019, the overpayment would be $2,669. Thus, when the tax surcharge of $3,948 is subtracted, plaintiff would still owe defendant $1,279.

of $7,526. We're also seeking treble damages under the [CFA]." Defense counsel countered asking the court to

> effectively affirm both the May 22, 2020 decision of [the first motion judge] and the February 8, 2021 decision of [the second motion judge], which ultimately found as a matter of law that . . . plaintiff has suffered no ascertainable loss under the [CFA] or suffered damages and, therefore, effectively—although not in the decision—that the plaintiff's claim for damages, as just articulated, should be dismissed and ask that judgment be entered as such.

Without argument or further clarification of the scope of the stipulation, the trial court then read into the record a combination of the findings and decisions of the two prior motion judges. The court noted the first motion judge denied summary judgment finding issues of fact remained regarding "whether defendant[s] [were] entitled to the rent based upon the tax surcharges granted . . . to the defendant[s] May 7, 2019" and "whether . . . plaintiff was required to pay the surcharge in light of the notices sent to . . . plaintiff." The trial court similarly recounted the first judge's conclusion "the two-year limitation period set forth in ordinance Section 155-4 applies."

The court then quoted the second motion judge's findings and decision denying plaintiff's second motion for summary judgment. The trial court then repeated verbatim the prior motion court's analysis, first identifying the elements

14

of a CFA claim, including "a causal relationship between the unlawful conduct and the ascertainable loss."  It further quoted the second motion court's summary of the parties' summary judgment arguments, and then read into the record the second motion court's response to the various arguments.

In particular, the court quoted the second summary judgment court:

> Considering the two-year statute of limitations under Hoboken ordinance § 155-4(c), the court finds . . . that [plaintiff] has not suffered an ascertainable loss under the CFA. . . .
> The City granted [defendants] a tax surcharge totaling $329 for twelve months, which was legally permitted to be transferred to plaintiff, a[nd] the two-year limitation period coupled with the $329 legally permissible surcharge evidences that in actuality [plaintiff] is indebted to [defendants] for the sum of $702.  Considering this, [plaintiff] has failed to show that he suffered an ascertainable loss.
>
> [(Internal quotation marks omitted).]

After reciting the findings of both motion courts, the trial court issued its oral decision, stating only the following:

> Now before me is . . . plaintiff's request for an award of $7,526 to be tripled by the [CFA] . . . and . . . defendant[s] asked for the decision to be affirmed.
>
> The court finds it has no basis really—the application is like an application . . . to set aside their decisions based upon the law of the case and—which I'm not married to but, because of these well-written

and well-argued opinions by both [motion judges], I am going to affirm the decisions of [both] and deny that request. So the defendant[s'] relief is granted and, therefore, the case is decided and resolved.

After the bench trial, the court issued its finding of "No Cause."

## II.

On appeal, plaintiff argues: (1) both summary judgment motions were improperly denied, as were their corresponding motions for reconsideration because "no genuine issues of material fact existed"; (2) the trial court erred when it overlooked defendants' failure to serve a disclosure statement upon plaintiff, which was "absolutely fatal to [the trial court's] analysis of the ordinance, as the two-year clock begins to run only after the disclosure statement is served"; (3) the trial court erred by failing to address whether the ordinance's two-year statute of limitations is preempted by the six-year statute of limitations applicable to plaintiff's CFA claim pursuant to N.J.S.A. 2A:14-1; and (4) the trial court failed to make any findings of fact or conclusions of law, and neglected to "either dismiss or enter judgment on the counterclaim."

Defendants respond, asserting questions of fact precluded summary judgment regarding plaintiff's obligation to "pay the surcharge in light of the notices," and arguing plaintiff's preemption claim should not be considered as it was never raised before the motion or trial courts. Defendants contend the trial

court made sufficient findings of fact and conclusions of law in adopting the findings of the summary judgment judges.

III.

A.

We first address plaintiff's arguments that the judge erred in denying his motions for summary judgment. Summary judgment decisions are reviewed de novo, applying the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). A court should deny summary judgment when "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

By contrast, we review with deference a trial court's denial of a motion for reconsideration under Rule 4:42-2, and disturb those findings only upon an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A dissatisfied litigant's desire to reargue an unsuccessful motion does not warrant reconsideration. Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

17

A review of the first motion record reflects the judge properly found disputed issues of material fact concerning the issue of notice to plaintiff of the rent increase. As the judge correctly noted, the parties asserted conflicting accounts concerning the nature and timing of notice, impacting whether defendants proceeded adequately in pursuing the tax surcharge by way of rent increase to plaintiff. Indeed, plaintiff contended defendants failed to adhere to the ordinance and consequently could not pass the tax surcharge to plaintiff. Conversely, in their counter-statement of material facts, defendants included facts allegedly demonstrating proper notice. Therefore, the first motion judge properly denied plaintiff summary judgment.

The first motion court also correctly rejected plaintiff's claim that our decision in Knight invalidated the ordinance. In Knight, we determined Hoboken's Board exceeded its authority by enacting a time-limiting regulation when the empowering ordinance contained no such limitation. Knight, 332 N.J. Super. at 551-52, 554. Further, after the Knight decision, Hoboken amended the ordinance in 2011 to expressly include the two-year limitation, thereby curing the problem presented by Knight. Therefore, the trial court properly found that Knight provided no basis for granting summary judgment in plaintiff's favor, denied plaintiff's motion, and correctly denied reconsideration.

A-2954-23

Similarly, the second motion judge did not err in denying summary judgment. The judge found plaintiff had not established his CFA claim as a matter of law because he had not demonstrated an ascertainable loss. Clearly, the parties disputed whether and, if so, for what period defendants were authorized to pass the rent surcharge to plaintiff. The judge found the record showed defendants were at least partially entitled to increase plaintiff's rent for a limited period in accordance with the surcharge. Offsetting that amount plaintiff owed defendants, the judge found plaintiff owed defendants outstanding rent. We thus perceive no error by the second motion judge in denying summary judgment, and therefore no error in the judge's denying reconsideration.

B.

Turning to the argument the trial court erred in entering a no cause in defendant's favor, we are persuaded the trial court's merely "affirming" the summary judgment findings failed in these circumstances to meet the requirement the trial court make sufficient findings of fact and conclusions of law. As the stipulations were ambiguous, and the trial court's findings were sparse, we are unable to conclude the trial court's decision was sound.

19

We recognize "[o]ur review of a judgment following a bench trial is limited." Accounteks.Net, Inc. v. CKR Law, LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (citing Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). Indeed, "findings [of fact] by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Questions of law, however, are reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We further acknowledge "[t]he basic thought is that generally litigants should be held to their stipulations and the consequences thereof." Negrotti v. Negrotti, 98 N.J. 428, 432 (1985). However, "the terms of a stipulation, if it is to be given effect, must be 'definite and certain and it is essential they be assented to by the parties.'" Kurak v. A.P. Green Refractories Co., 298 N.J. Super. 304, 325 (App. Div. 1997) (quoting Schere v. Twp. of Freehold, 150 N.J. Super. 404, 407 (App. Div. 1977)). Further, stipulations are not binding on the trier of fact, see AGS Computers, Inc. v. Bear, Stearns & Co., 244 N.J. Super. 1, 5 (App. Div. 1990); and courts need not accept stipulations as to matters of law, see State v. Bodtmann, 239 N.J. Super. 33, 47 (App. Div. 1990).

A-2954-23

Here, the parties represented to the trial court their proposed stipulation to the "facts" found by the second motion court. The record contains no further specificity concerning the scope of the stipulated facts and no suggestion the parties intended the court to adopt the second judge's legal conclusions or any portion of the first motion judge's factual findings or legal determination.

The first and second motion judges at a minimum found genuine issues of material fact warranting denial of summary judgment; they also appeared to diverge on their findings concerning the issue of notice. Yet the trial court made no attempt to harmonize the two or provide its reasons for determining if or when the relevant notices were or were not lawfully provided.

That the stipulation was hopelessly vague can be appreciated by the parties' conflicting positions at trial. After announcing their general "stipulation" to the second motion judge's factual findings, the parties each presented diametrically different claims concerning whether plaintiff established an ascertainable loss; tied inextricably to divergent factual claims as to notice and legal claims concerning the ordinance's applicability and defendants' entitlement to collect the surcharge from plaintiff. It strains logic to conclude plaintiff somehow assented to accepting as binding the legal

21

conclusion of the second motion court, namely, that he failed to show entitlement to relief under the CFA.

Ultimately, Rule 1:7-4 requires the court to find facts and state conclusions of law in all actions tried without a jury. Specifically, the Rule mandates:

> The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right.
>
> [R. 1:7-4(a).]

Disregard for this obligation exacts "a disservice to the litigants, the attorneys and the appellate court." Curtis v. Finneran, 83 N.J. 563, 569-70 (1980). "[C]ourt[s] must state clearly [their] factual findings and correlate them with the relevant legal conclusions." Id. at 570.

Here, the trial court was required to determine whether plaintiff suffered an ascertainable loss, by calculating rental amounts paid and owed by plaintiff. This required the court to resolve the issues of whether defendants provided required notice and lawfully imposed the rental surcharge on plaintiff, and for what period of time. The court's "affirming" by broad brush all prior findings

of both motion courts failed to adequately address these pivotal questions or satisfy Rule 1:7-4(a).

Generally, a court's "failure to provide reasons necessitates a remand." Allstate Ins. v. Fisher, 408 N.J. Super. 289, 303 (App. Div. 2009). When a court fails to provide reasons in support of its decision, "we are left with the option of remanding for a statement of reasons or reversing and remanding for consideration . . . anew." Ibid. Here, we are satisfied the latter is necessary.

Regarding plaintiff's preemption claim as framed before us, our review of the record persuades us his arguments on appeal are substantively different than the Knight arguments or any other arguments plaintiff raised before the trial court, or the motion judges. See Pfannenstein v. Surrey, 475 N.J. Super. 83, 99 (App. Div. 2023) ("We will not consider an issue that is raised for the first time on appeal unless the issue pertains to the trial court's jurisdiction or concerns a matter of great public interest."). Here, plaintiff asserts the CFA preempts the ordinance. Specifically, plaintiff argues "[t]he trial court's application of the ordinance undercuts N.J.S.A. 2A:14-1, overrules CFA case law, and produces varying results in CFA claims by tenants depending on municipality." As the crux of plaintiff's challenge appears to be a claim the CFA's six-year statute of limitations preempts the ordinance's requiring plaintiffs to bring rent challenges

within two years of being served with a disclosure statement, we are satisfied plaintiff debuts this argument on appeal.

We affirm both orders denying summary judgment and reconsideration. We vacate the court's order finding no cause and remand for a new trial to make findings of fact and conclusions of law.

Affirmed in part, vacated in part, and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2954-23